J-A22040-17
J-A22041-17

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| IN RE: T.R.R. | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| APPEAL OF: H.W.R., MOTHER | : | |
| | : | No. 918 EDA 2017 |

Appeal from the Decree February 15, 2017
in the Court of Common Pleas of Bucks County,
Orphans' Court Division, at No. 2014-A9008.

| IN RE: T.R.R. | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| APPEAL OF: L.R., JR., FATHER | : | |
| | : | No. 948 EDA 2017 |

Appeal from the Decree February 15, 2017
in the Court of Common Pleas of Bucks County,
Orphans' Court Division, at No. 2014-A9008.

BEFORE: BOWES, LAZARUS, AND PLATT[*], JJ.

MEMORANDUM BY PLATT, J.:                    **FILED OCTOBER 18, 2017**

In these companion cases, H.W.R. (Mother) and L.R., Jr. (Father),
appeal from the decrees of the Orphans' Court, granting petitions for the
involuntary termination of their respective parental rights (and duties) to their
son, T.R.R. (Child) (born in May of 2008) and awarding custody to the Bucks

---

[*] Retired Senior Judge assigned to Superior Court.

County Children and Youth Social Services Agency (CYS).[1]  We affirm on the basis of the trial court's opinion.[2]

In its opinion, the trial court fully and correctly sets forth the relevant facts and procedural history of this case.  Therefore, we have no reason to restate them at length here.

We note briefly for context and the convenience of the reader that this case has a complicated and convoluted history.  Child has been in the care of CYS since December of 2010.  The trial court adjudicated Child dependent and placed him in the legal and physical custody of CYS at a shelter care hearing held in this matter on January 14, 2011.  (**See** Trial Court Opinion, 2/15/17, at 1; **see also** N.T. Hearing, 5/16/16, at 16).  The trial court confirms that on September 11, 2012, the permanency goal was formally changed, by agreement of the parents (who were represented by separate counsel at the hearing), from reunification to adoption.  (**See** Trial Ct. Op., 2/15/17, at 2).

Child had entered CYS' care after he was removed from Father while Mother was away on a visit to California.  It bears noting that Mother left Child (and two older siblings from a prior relationship) with Father even though he had previously attempted suicide.

---

[1] Child's long-time foster parents plan to adopt him.

[2]  We address the appeals together in one unified decision (as did the trial court).  We will refer to the cases in the singular, for simplicity.

Father had also been convicted of arson. On an inspection visit, Father's probation officer observed that Father's home presented safety issues for Child because Father had left his psychiatric medication scattered all over the floor of the residence. At a hearing, a CYS caseworker testified that the probation officer observed, "Father did not seem concerned that a two-year old would pick them up." (N.T. Hearing, 3/10/16, at 39). CYS observed that Child had rotted teeth, and displayed significant speech and physical delays; he also needed leg braces, and other early intervention services. (*See id.*).

After CYS assumed custody, and placed Child in foster care, both parents, separately, consented to the termination of their parental rights, but subsequently revoked their consents. The trial court vacated the orders of termination. CYS appealed from the orders vacating the terminations. This Court eventually quashed the appeal. The case returned to the Orphans' Court. During the time of this appeal, Child continued to live with his foster parents.

After remand, the court held eleven days of hearings. The testimony revealed many points of dispute.[3] It bears noting that both parents have

---

[3] The relationship between Mother and Father, the biological parents, Appellants here, and CYS appears to have been somewhat contentious. For example, the question of both parents' hygiene came up for discussion. Father's hygiene appears to have been more of an issue than Mother's, as references to it recur repeatedly. Father denies there is an issue and claims to shower every day. However, CYS personnel maintained that Father actually reported taking a shower only every other day, and demanding that if CYS wanted him to shower more, it should pay his water bill. CYS appears to have

mental health issues in varying degrees. One point of dispute was whether the parents were sufficiently forthcoming in acknowledging their mental health issues, and related health issues (such as Father's family history of epilepsy) or if they resisted CYS efforts at formal evaluation and treatment.

Both Mother and Father completed parenting classes, but CYS maintained they failed to apply the skills they were taught. Child resisted supervised visits and often acted out. The foster parents blamed Mother and Father. Mother and Father blamed the foster parents. CYS faulted Mother and Father for failing to follow up on suggested parenting behaviors during supervised visits.[4]

On February 15, 2017, after the conclusion of the hearings, the trial court granted the petition for involuntary termination of parental rights, accompanied by a lengthy joint opinion. In the opinion the court noted that:

> [I]t is irrefutable that Parents attempted to improve their parenting skills and achieve some of [CYS'] objectives. However, it was repeatedly apparent, throughout their testimony as well as that of [CYS] witnesses, that Parents frequently did not comprehend, could not recall, failed to implement, or resisted compliance with [CYS's] plan.

(Trial Ct. Op., 2/15/17, at 29).

---

encouraged Child to refer to his foster parents as his "forever parents" and Appellants as his "visiting parents."

[4] Eventually, CYS stopped the supervised visits altogether.

- 4 -

Mother and Father filed timely notices of appeal and concise statements of errors complained of on appeal on March 16, 2017. The trial court filed a joint opinion which referenced its original opinion of February 15, 2017. (***See*** Rule 1925(a) Opinion, 4/03/17); ***see also*** Pa.R.A.P. 1925.

Mother raises the following claims on appeal:

1. The [t]rial [c]ourt erroneously granted [CYS'] petition to terminate the parental rights of [Mother] as [CYS] failed to prove repeated and continued incapacity, abuse or neglect on the part of Mother as required [by] §2511(a)(2).

2. The [t]rial [c]ourt erroneously granted [CYS'] petition to terminate the parental rights of Mother as it failed to prove that the services or assistance reasonably available to her did not remedy the conditions which lead [sic] to the placement of [Child].

3. The [t]rial [c]ourt erroneously granted [CYS'] petition to terminate the parental rights of [Mother] under §2511(a)(8) as there is no competent evidence that the conditions which led to the removal or placement of [Child] continue to exist as to Mother.

(Mother's Brief, at 3).

Father raises the following questions on appeal:

1. Did the evidence presented at the hearing establish by clear and convincing evidence the existence of grounds sufficient to support the termination of Father's parental rights pursuant to section 2511(a)(2), (5) or (8)?

2. Did the trial court err in effectively requiring Father to carry the burden of proof with regard to his capacity to parent?

3. Did the trial court err in failing to consider and/or give weight to [CYS'] lack of reasonable efforts in its decision to terminate parental rights[?]

(Father's Brief, at 3).

Our standard of review for a challenge to the termination of parental rights is well-settled:

> In an appeal from an order terminating parental rights, our scope of review is comprehensive: we consider all the evidence presented as well as the trial court's factual findings and legal conclusions. However, our standard of review is narrow: we will reverse the trial court's order only if we conclude that the trial court abused its discretion, made an error of law, or lacked competent evidence to support its findings. The trial judge's decision is entitled to the same deference as a jury verdict.

*In re L.M.*, 923 A.2d 505, 511 (Pa. Super. 2007) (citations omitted).

This Court has explained:

> Where the hearing court's findings are supported by competent evidence of record, we must affirm the hearing court even though the record could support an opposite result.
>
> We are bound by the findings of the trial court which have adequate support in the record so long as the findings do not evidence capricious disregard for competent and credible evidence. The trial court is free to believe all, part, or none of the evidence presented, and is likewise free to make all credibility determinations and resolve conflicts in the evidence. Though we are not bound by the trial court's inferences and deductions, we may reject its conclusions only if they involve errors of law or are clearly unreasonable in light of the trial court's sustainable findings.

*In re M.G.*, 855 A.2d 68, 73-74 (Pa. Super. 2004) (citations omitted).

This Court has long recognized that the "best interests of the child is the paramount consideration is . . . beyond peradventure. . . . Indeed, even the rights of natural parents are subordinate to the child's best interest." *Cardamone v. Elshoff*, 659 A.2d 575, 580 (Pa. Super. 1995) (citations omitted).

As the party seeking involuntary termination of Mother's and Father's parental rights, CYS bore the burden of establishing by clear and convincing evidence that the stated grounds for doing so existed. The grounds for termination due to parental incapacity that cannot be remedied are not limited to affirmative misconduct. To the contrary, those grounds may include acts of refusal as well as incapacity to perform parental duties. The Orphans' court must examine the individual circumstances of each and every case and consider all explanations offered by the parent to determine if the evidence in light of the totality of the circumstances clearly warrants the involuntary termination.

*In re A.L.D.*, 797 A.2d 326, 337 (Pa. Super. 2002) (citations omitted).

Here, the trial court terminated Mother's and Father's parental rights pursuant to 23 Pa.C.S.A. §§ 2511(a)(2), (5), (8), and (b). In order to affirm the termination of parental rights, this Court need only agree with any one subsection of Section 2511(a). *See In re B.L.W.*, 843 A.2d 380, 384 (Pa. Super. 2004) (*en banc*), *appeal denied*, 863 A.2d 1141 (Pa. 2004).

Section 2511 provides, in pertinent part:

**§ 2511. Grounds for involuntary termination**

**(a) General rule.—**The rights of a parent in regard to a child may be terminated after a petition filed on any of the following grounds:

. . .

(2) The repeated and continued incapacity, abuse, neglect or refusal of the parent has caused the child to be without essential parental care, control or subsistence necessary for his physical or mental well-being and the conditions and causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied by the parent.

. . .

**(b) Other considerations.**—The court in terminating the rights of a parent shall give primary consideration to the developmental, physical and emotional needs and welfare of the child. The rights of a parent shall not be terminated solely on the basis of environmental factors such as inadequate housing, furnishings, income, clothing and medical care if found to be beyond the control of the parent. With respect to any petition filed pursuant to subsection (a)(1), (6) or (8), the court shall not consider any efforts by the parent to remedy the conditions described therein which are first initiated subsequent to the giving of notice of the filing of the petition.

23 Pa.C.S.A. § 2511(a)(2), (b).

It is well-settled that a party seeking termination of a parent's rights bears the burden of proving the grounds to so do by "clear and convincing evidence," a standard which requires evidence that is "so clear, direct, weighty, and convincing as to enable the trier of fact to come to a clear conviction, without hesitance, of the truth of the precise facts in issue." **In re T.F.**, 847 A.2d 738, 742 (Pa. Super. 2004) (citation omitted). Further,

A parent must utilize all available resources to preserve the parental relationship, and must exercise reasonable firmness in resisting obstacles placed in the path of maintaining the parent-child relationship. Parental rights are not preserved by waiting for a more suitable or convenient time to perform one's parental responsibilities while others provide the child with his or her physical and emotional needs.

**In the Interest of K.Z.S.**, 946 A.2d 753, 759 (Pa. Super. 2008) (citations omitted).

After a thorough review of the record, the briefs of the parties, the applicable law, and the well-reasoned opinion of the trial court we conclude

that the issues Appellants have raised on appeal do not merit relief. The trial court explained the reason for its decision in this way:

> Based upon the evidence, it is clear that the conditions which have caused Mother's and Father's incapacity have not been remedied over a reasonable period of time; nor will they be remedied in the reasonably near future. [Child] has been in the care of [CYS] for more than six [ ] years. During this time, various social workers and other personnel have attempted to work with Mother and Father to effectuate a change in their attitudes and behaviors. Essentially, the result has been the same; due to the parents' incapacity, they are not reasonably capable of recognizing [Child's] needs or their inability to meet those needs. The quantum of improvement as parents has not been sufficient.

(Trial Ct. Op., 2/15/17, at 32).

On independent review we find that the trial court's findings are supported by the record. Accordingly, under our standard of review, we affirm. However, we affirm with a measure of reluctance, because the evidence of record also confirms, as the trial court suggests, that the parents did make at least some effort to comply with CYS directives. (***See id.*** at 29).

We also recognize that parents' counsel have identified instances where the conduct of certain CYS personnel either amounted to an abandonment of their efforts to assist the parents, as acknowledged by the trial court, (***see id.*** at 1), or provided such inconsistent direction that the parents were improperly inhibited from doing everything they were expected to do.

Father also argues that the trial court erred by failing to take into account CYS' lack of reasonable efforts to accommodate his mental handicap. (***See*** Father's Brief, at 53-55). However, these related arguments do not

merit relief. The trial court candidly acknowledges CYS' deficiencies. (**See** Trial Ct. Op., 2/15/17, at 1). Nevertheless, it concludes that parents lack the capacity to parent Child required for the award of custody.[5]

Moreover, it is not our purpose to sit in judgment of the conduct of CYS personnel. Our paramount concern remains the best interest of the Child. Child has been "stuck in limbo," (Trial Ct. Op., 2/15/17, at 1), for over six years. "Parental rights are not preserved by waiting for a more suitable or convenient time to perform one's parental responsibilities while others provide the child with his or her physical and emotional needs." **K.Z.S.**, **supra** at 759. (citations omitted).

Whether the parents made sufficient effort to demonstrate their capacity to parent Child is a question of the weight of the evidence and the credibility of witnesses, both of which are the province of the trial court. Where the Orphans court's findings are supported by competent evidence of record, we must affirm its decision even though the record could support an opposite result. **See In re M.G.**, **supra** at 73-74.

---

[5] Furthermore, a change in goal from reunification to adoption, as occurred in this case, "**ends any dispute that may exist between CYS and the parent as to the adequacy of CYS' services aimed at reuniting the parent with his/her children and, of course, as to whether CYS had selected the most appropriate goal for this family.**" **In re A.L.D.**, **supra** at 339 (citation omitted) (emphasis added in original).

Under our standard of review, the trial court properly disposes of the questions presented. (**See** Trial Ct. Op., 2/15/17, at 45) (concluding that involuntary termination of parental rights is warranted based on the entire record). Accordingly, we affirm on the basis of the trial court's opinion.

Decrees affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 10/18/17